On the Merits.
We state at the outset that there was a dís¿ position on the part of some of the witnesses to the most hopeful view of values, present and in the near future; while others were very much less inclined to so hopeful a view of things. The expropriated value of the property varies greatly. The minimum value testified to by some of the witnesses for plaintiff would allow plaintiff only a very few hundred dollars for the property. Other witnesses, one in particular, an expert for plaintiff, valued at $1,225 the land and the' damages. There are here and there in the-testimony statements of witnesses who, though inclined to a low estimate, none the less lead to the inference that the property is not of such little value. For instance, plaintiff’s general agent, who had not placed a very high value on the property and seemed to think that it had very little value, nonethe-’ less stated as a witness, quoting his words-when referring to some drainage canal:
*164 “In one respect, it (the drainage canal) adds greatly to the value, that is in matter of drainage.” (Words in parentheses ours.)
True, the quoted words are preceded and followed by statements at variance with that favorable view, which we do not overlook. Plaintiffs in support of their contention for a low estimate introduce proof of the value of other lands at or near the line of plaintiff’s road.
We will state, in this connection, that the amount which others have, chosen to accept for their land from plaintiff cannot be considered of the greatest weight in fixing values, although it is worthy of some consideration.
There are owners who part with their 'land just at the inopportune time. They ••do not succeed in selling their property to : advantage even in a favorable market. 'They are of the number who sell “a skin for
groat and buy the tail for a shilling.” 'There are others who, for one reason or another, are generally fortunate. They obtain the most that can be had. Neither should toe closely followed in laying down a standard to be followed.
We .are further informed by the record that •other lands, near defendant’s, had been expropriated. Plaintiff invites our attention to the amount which was allowed in the expropriation proceedings, which were affirmed by this court. Here again we find nothing •of itself conclusive in estimating the value of the property, especially in view of the fact that plaintiff’s brief contains the following:
“Now the Meyer squares, property in question, are better property than those in controversy. Cleared, higher, and near by Palmetto street, the only open road; and if they are worth $1,000 each, defendant’s square should be worth less, the'value diminishing as one goes deeper in the swamp, say from $600, to $400.”
The foregoing is contained in an appendix of plaintiff’s brief. It is part of a former brief in another case. We infer that the former case was tried in the district court after the case now before us was tried. The appeal in the former case, to wit, the Xavier company, is reported in 115 La. 328, 39 South. 1.
Here again we do not attach the greatest importance to the statement quoted except to that portion which speaks of the Meyer property as better property than that in controversy. It follows that it- had more value.
We pass to a consideration of the testimony for the defendant, and here, also, we find estimates varying in amount from $1,000 a square to several thousand a square.
One of the fortunate owners of several squares near the land of the defendant testified as a witness that his land did not cost very much, and yet he was hopeful enough to think that he would find some one who would pay him $5,000 a square for his property. It is nearly always the misfortune of these hopeful owners that they cannot find any person to agree with them sufficiently to buy their lands, although it must be said that these extreme views are conducive to a happy frame of mind.
We have considered the facts as closely as we could, and have concluded that $2,000 is a fair valuation; divided as follows: $1,-500 for the land expropriated and the damages in the square No. 598; $500 for the value and damages in square No. 571. In reviewing the testimony, we were lead to take a basis for fixing the value and damages. The result has taken us to a different amount. A few hundred dollars less than that found by the jury. We do not think that we should abandon our estimate for the jury’s verdict although we know that it is entitled to the greatest weight in expropriation proceedings. New Orleans & W. R. Co. v. Morere, 48 La. Ann. 1277, 20 South. 733; New Orleans, Ft. J. & G. I. R. R. v. McNeely, 47 La. Ann. 1298, *166 17 South. 798; Postal Telegraph Cable Co. v. Louisville, N. O. & T. Ry. Co., 43 La. Ann. 524, 9 South. 119.
In this case we are not favored with the items going to make up the amount found by the jury. In consequence, we find ourselves •compelled to adhere to our own estimate.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount from $2,400 to $2,000. With this amendment, the judgment of the lower court is affirmed, at appellee’s cost.